THE CHICAGO CITY RAILWAY COMPANY

*v.*

MARY A. GREGORY.

*Opinion filed June 14, 1906.*

1. EVIDENCE—*how a party may impeach his own witness.* A party cannot impeach a witness voluntarily called by him except as that result may be incidentally accomplished by proving a state of facts differing from that sworn to by the witness, where there was no fraud or misrepresentation by the witness at to what he would testify to, such as induced the party to call him.

2. SAME—*a party cannot impeach his own witness by proving contradictory statements.* A party whose witness, voluntarily called by him, has unexpectedly testified at variance with alleged statements, oral or written, made before the trial, may call the attention of the witness to such statements for the purpose of refreshing his memory or awakening his conscience, but he cannot prove the statements, either as independent evidence or for the purpose of impeaching the witness, who denies having made them, and who has not misrepresented the nature of his intended testimony.

3. TRIAL—*when getting incompetent facts before jury by indirect means will reverse.* Where the only medical testimony in a personal injury case is given by a witness for the plaintiff and is prejudicial to plaintiff's case, the action of plaintiff's counsel in repeatedly stating, in the presence of the jury, the substance of alleged statements made by the witness and claimed to be at variance with his testimony, after the court has ruled that such statements were not admissible in evidence, is ground for reversal.

APPEAL from the Branch Appellate Court·for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding.

WILLIAM J. HYNES, and FRANKLIN B. HUSSEY, (MASON B. STARRING, of counsel,) for appellant.

DAVID K. TONE, and H. M. ASHTON, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Mary A. Gregory, the appellee, obtained a judgment in the superior court of Cook county against the Chicago City Railway Company, the appellant, for $1250, in a suit brought by her against said company to recover for personal injuries alleged to have been sustained by her through the negligence of appellant. The Appellate Court for the First District affirmed the judgment of the superior court, and the record is now brought to this court for review.

Appellee's injuries were occasioned by falling to the street from one of appellant's street cars on the evening of May 21, 1900. She had boarded the car, which was running east on Forty-seventh street, at the intersection of that street and Ashland avenue, in the city of Chicago. She asked for and received a transfer to a line of cars running north and south on Center avenue. This last named avenue crosses Forty-seventh street some distance east of Ashland avenue. It was appellant's custom to stop its east-bound cars, as they approached Center avenue, on the west side of the avenue, in order to transfer passengers to the Center avenue line. The witnesses for appellant, and some of the witnesses called by appellee, testified that the car in question came to a stop on the west side of the avenue, while appellee herself denied that any·stop was made on that side. The witnesses for the respective parties differ materially as to what took place

after the car had crossed Center avenue. Appellant's contention in the trial court was that only one stop was contemplated or usually made at Center avenue, and that was on the west side. Its witnesses testified that after the car had crossed Center avenue appellee arose from her seat and that the conductor then signaled the motorman to stop the car, but before it had been brought to a full stop appellee attempted to alight from the moving car and fell or was thrown to the ground. Appellee and her witnesses testified that after the car had crossed Center avenue it was brought to a stop on the east side of the avenue and that appellee then started to alight, but that while she was in the act of stepping to the ground the car started with a sudden jerk, throwing her to the ground.

Appellee testified that she soon afterwards boarded a south-bound Center avenue car and rode to a point about a block and a half distant from her home; that the conductor helped her off the car, and that as soon as he had let go of her she fell to the ground; that she got up and took a few steps and fell down again; that she continued to fall down every few steps, and was an hour and a half in walking the block and a half to her home; that when she reached her home she went up-stairs, and did not tell her husband or anyone else in the house anything about the accident until the next morning; that on the morning after the accident she was unable to get out of bed; that she was confined to her bed, at intervals, for a period of two months and was unable to do any work; that before the accident she did her washing, but has not been able to do that kind of work since; that immediately after the accident she could not straighten up, and "seemed to be broke up and nervous and all rattled and shook up" for nearly three months; that she finally got a little better, but has never been the same since; that when she does any work it affects her back; that she weighed between 140 and 145 pounds before the accident and weighs only 118 pounds now; that she didn't have any womb trouble

until this accident, but has been afflicted with it ever since; that she does not know how to describe the womb difficulties; that her menstrual flow has not been regular since the accident; that immediately after the accident the flow continued for six months; that she frequently has a sharp pain extending from her shoulders down her back to the end of her spine, especially in the small of her back.

The principal controversy in the case is as to whether or not appellee suffered to the extent described by her, and if so, whether those sufferings resulted from the accident, appellant contending that the only injuries resulting from the accident were bruises and nervousness consequent thereon, from which she soon recovered.

Appellee also testified that in November, 1896, she had a miscarriage, caused by being thrown against the side of a street car; that she was taken to a hospital, where an operation was performed, but she claimed to have fully recovered from the effects of the miscarriage and operation. Dr. Steele, who performed the operation, testified, on behalf of appellant, that the ailment of the womb when the operation was performed was such as produces an enlargement of the womb, which would be likely to produce displacement or prolapsus of that organ.

A number of neighbors, relatives and friends testified to the apparent change in appellee's health after the accident, and that she was confined to her bed for some time thereafter, and has not since performed certain kinds of work which she was accustomed to perform prior to the accident.

The only medical testimony introduced by appellee (except that of a witness in rebuttal who testified that displacement of the womb might be caused by falling upon the ground or street) was that of Dr. J. G. Craig. He testified in her behalf that on May 22, 1900, (the day after the accident,) he was called to treat her for injuries received in an accident; that he found her suffering from bruises and nervousness and complaining of pain in her back; that he vis-

ited her again on May 23 and 25 of the same year and found nothing except the bruises and nervousness; that in June, 1900, he was again called to see appellee, found her sick, and upon examination discovered that she was afflicted with nephritis or acute Bright's disease, and that nothing else then ailed her. The witness was then handed a written statement or memorandum by counsel for appellee, and in response to questions, stated that it was in his handwriting; that he wrote it as a description of appellee's condition at the time it was written, but did not know what that condition was due to, nor did he know when the statement or memorandum was written, as it was not dated; that, no matter when it was written, it was a statement of appellee's condition when he treated her or when he was treating her; that she had nervous prostration, female trouble, back trouble and stomach trouble; that the memorandum was a statement of her sickness and that he knew that appellee had falling of the womb. On cross-examination Dr. Craig stated that the written memorandum was merely an enumeration of the different troubles with which appellee had been afflicted from the time he first knew her, down to the time he last saw her. He further testified that the pains of which appellee complained immediately after the accident were such as would be of a muscular nature; that she had no broken bones or cuts and no fever; that there was no complaint of any pain suggesting falling of the womb at that time; that in his judgment the Bright's disease had no relation to the accident; that at the time she was afflicted with Bright's disease she also had womb trouble and nervousness and was very sick for a considerable length of time. His testimony supported the contention of appellant, and not that of appellee, by whom he was called.

During the direct examination of Dr. Craig by counsel for appellee the following questions were asked and answers given:

"Q. Do you know Mr. Smith, the gentleman sitting back here?—A. Yes; I am well acquainted with him. Q. Didn't you tell Mr. Smith here—do you remember Mr. Smith calling to see you a year ago in March?—A. I remember of Mr. Smith being there several times. Q. Do you remember of telling Mr. Smith at that time that you did not like to come and testify in this case?—A. I don't remember whether I did or not. Q. You don't remember whether you did or not?—A. I do not. Q. Didn't you tell Mr. Smith at that time that you were doing quite a little work for the Chicago City Railway Company— —A. I never did. Q. And didn't like to appear in any cases against them?—A. I never told him anything of the kind; I never did a dollar's worth of work for the Chicago City Railway Company in my life. Q. Didn't you tell Mr. Smith— —A. I never told him anything like that. Q. Wait until I put the question; I move to strike that out. (Stricken out.) Q. Now, did you not in that interview say that the Chicago City Railway Company was worth about $2000 to you and that you wanted to be excused in this case?—A. I never did. Q. You did not?—A. No, sir; I did not tell him anything of the kind."

The objection made by appellant to each of the above questions was overruled and appellant's rights were preserved.

William D. Smith, the person referred to in the above examination, was afterwards called by appellee. He testified that he was a law clerk in the office of counsel for appellee, and that he saw Dr. Craig over a year ago and had a talk with him. He was then asked the following questions in succession: "Q. Did you not at that time present to Dr. Craig a statement, and read to him a statement as follows: (Objected to and objection sustained.) Q. Did you not at that time present to him the paper which will be identified here as plaintiff's Exhibit 1, and did he not at that time tell you that those were the injuries which the plaintiff suffered? —A. He did. (Answer stricken out.) Q. State whether

or not at that time he said he did not like to be called as a witness in this case because the Chicago City Railway Company was worth about $2000 a year to him? (Objected to and objection sustained.)"

Again, during the examination in chief of Dr. Craig the following questions were asked and answers given, over the objection of appellant: "Q. Isn't it true that you handed this paper to Mrs. Gregory in June, 1900?—A. I don't know; that is my writing; that is my paper; I don't know who I gave it to or when it was given. Q. Isn't it true that you told her then that these were the troubles that you found upon her?—A. Yes, they were— Q. Did you tell her so?— A. They were the troubles; that is what I treated her for. Q. Didn't you tell her then that those troubles, in your judgment as a medical man, resulted from her accident?—A. I did not tell her anything of the kind; that is just a statement of her condition as regards her sickness."

On the direct examination of appellee her counsel handed her the written statement made by Dr. Craig and asked her from whom she received it. Appellant objected to any examination of the witness concerning the written statement or its contents. Counsel for appellee then stated, in the presence of the jury and over the objection of appellant, that he had a right to show by the witness that Dr. Craig handed her a written statement and told her that these were the diseases that ailed her and that they were caused by this accident; that such testimony was competent for the purpose of showing that counsel for appellee expected the doctor would so testify.

The written memorandum above referred to was offered in evidence at the close of the direct examination of Dr. Craig and was excluded by the court. It was also offered and excluded during the direct examination of appellee.

The law is well settled that a party to a suit cannot impeach a witness voluntarily called by him, except as that result may be incidentally accomplished by proving a state of

facts differing from that sworn to by the witness in question. Greenleaf on Evidence, sec. 442; *Rockwood* v. *Poundstone,* 38 Ill. 199; *Griffin* v. *City of Chicago,* 57 id. 317; *American Hoist and Derrick Co.* v. *Hall,* 208 id. 597; 10 Ency. of Pl. & Pr. 316.

There was no attempt to show that Dr. Craig had stated to counsel or to plaintiff that he would swear to anything which he did not testify to. The question whether a party may set himself right with the jury by showing that a witness has perpetrated a fraud upon him by representing that he would give evidence in his favor, and then, when called by that party, giving evidence diametrically opposed to that which he had said he would give, does not arise here.

If Dr. Craig unexpectedly gave testimony against appellee which was at variance with statements, either written or oral, made before the trial, appellee had a right to call the attention of the witness to his former statements for the purpose of refreshing his memory or awakening his conscience. (10 Ency. of Pl. & Pr. 318.) It was not proper, however, to prove such former statements, either for the purpose of having the jury consider them as independent evidence or for the purpose of impeaching the witness.

The question here is whether a party will be permitted by indirect means to acquaint a jury with facts which he is not allowed to bring to their attention by direct proof.

In *Scripps* v. *Reilly,* 38 Mich. 10, the Supreme Court of Michigan, in holding that repeated offers of proof of incompetent matter might be cause for reversal, said:

"Everything having a tendency to prejudice or influence a jury in their deliberations which is not lawfully admissible in evidence on the trial of the cause should be, so far as possible, kept from coming to their knowledge during the trial. An impression once made upon the mind of a juror, no matter how, will have more or less influence upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be or how carefully

he may have been instructed by the court to not permit such incompetent matter to influence him or to have any bearing in the case, it will be difficult, if not impossible, for him to separate the competent from the incompetent, or to show to what extent his impressions or convictions may be attributed to that which properly should not have been permitted to come to his knowledge. But whatever the reason for the rule may be, all courts agree in excluding incompetent testimony and that an error in this respect will be sufficient cause for reversal. This rule would be but slight protection if counsel or witness could be permitted to make a statement, but not under oath, of the incompetent testimony, or counsel state same fully to the jury, in their argument or otherwise. The essence of the wrong consists in the fact that such incompetent testimony is brought to the attention of the jury, more than in the method adopted in communicating the fact. No matter how the information is obtained the result is the same."

Again, in the recent case of *Chicago and State Line Railway Co.* v. *Kline,* 220 Ill. 334, where, by means of questions, counsel succeeded in getting before the jury assumed facts which the defendants had no right to prove, notwithstanding the repeated rulings of the court that such questions were improper, this court said: "In such a case the harm is often done before the ruling, and a correct ruling is not always a sufficient antidote. When the court had once ruled on the question it ought to have enforced respect for the ruling by not permitting reiterations of the questions."

In the case at bar, the only medical testimony offered by appellee with reference to the extent of the injuries resulting from the accident was that of Dr. Craig. If his testimony was true, the only injuries sustained by appellee were of a temporary character, which soon passed away, and the physical disorders which caused appellee's protracted illness and from which she has never fully recovered were not attributable to her fall from the street car on May 21, 1900. He

was not directly contradicted by any witness, and his testimony could have been harmonized with much of the testimony given by the appellee and her neighbors, relatives and friends who testified to her condition before and after the accident. It was therefore of the utmost importance in this case that appellee should have been restrained by the trial court from getting before the jury, either directly or indirectly, incompetent and improper matters which would tend to impeach the testimony of Dr. Craig, or which might be considered by the jury as independent evidence of the injuries suffered by appellee as a result of the accident.

It seems to have been the purpose of counsel for appellee throughout the case, after Dr. Craig had given his testimony, to show that he had made certain statements out of court contrary to his testimony, to show what those statements were, and to impress upon the minds of the jury that the testimony of this witness, in so far as it was not in conformity with his previous statements, should not be given any credence by the jury.

During the direct examination of appellee, immediately after the court had excluded the written memorandum made by Dr. Craig for the second time, appellee was asked by her counsel the following question: "And I ask what Dr. Craig stated to you at the time he gave you that paper with reference to what were your ailments and how they were caused." Appellant interposed an objection to this question, which the court sustained. Thereupon counsel for appellant said: "I offer to show by the witness that Dr. Craig stated to Mrs. Gregory—" At this point appellant objected to the offer. The court overruled the objection, and counsel for appellee proceeded: "I offer to show that Dr. Craig stated to Mrs. Gregory, at the time he handed her this statement, which has been heretofore referred to, that she was then suffering from falling of the womb, strain of the spine and muscles of the back, and that was caused by her falling from the street car in question; that Mrs. Gregory took this statement to her

attorney afterwards, and it has been in his possession ever since."

The court erred in permitting counsel for appellee to make this offer of proof in the presence of the jury, and when taken in connection with the various questions which had been propounded by counsel for appellee in the effort to impeach Dr. Craig and to get his written statement and oral statements before the jury, it was exceedingly prejudicial to appellant's cause. Appellee succeeded in getting before the jury the very matters which the court had repeatedly held were improper for the consideration of the jury.

Counsel for appellee, in his closing argument to the jury, made the following statement: "Dr. Craig came upon this witness stand and he didn't remember anything, to begin with, except Bright's disease, and you remember when we produced that slip to him he found that he stated upon the slip that the plaintiff was suffering from spinal trouble and from falling of the womb and certain other things. He didn't state one word about Bright's disease. We had to produce that slip and I had to put that under his nose before he could recall it." These remarks were without justification or excuse, in view of the repeated rulings of the court during the course of the trial. It is true that no ruling adverse to appellant was made by the court when objection was made to these remarks, but they undoubtedly increased the prejudicial effect of the improper offer of proof made by appellee's counsel during the taking of testimony.

Our attention is called to certain erroneous rulings of the court in the admission and exclusion of evidence. They will probably not be made upon another trial, and it is unnecessary to discuss them in this opinion.

For error above pointed out the judgment of the Appellate Court and the judgment of the superior court will be reversed and the cause will be remanded to the superior court. *Reversed and remanded.*