### Finch Bros. v. Arthur Betz.

1. COMMISSIONS—*when broker entitled to.* A broker is entitled to commissions upon a sale concluded by his principals if he is the procuring cause in the consummation thereof.

2. WITNESS—*right to refresh recollection.* If a witness called by a party unexpectedly gives testimony which is at variance with a previous written statement made to such party, such written statement may be brought to the attention of the witness for the purpose of refreshing his memory or awakening his conscience.

Assumpsit. Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the November term, 1906. Reversed and remanded. Opinion filed June 1, 1907.

J. R. FITZGERALD, for appellants.

REDMON & HOGAN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

Appellee recovered a judgment against appellants for the sum of $200, claimed by him to be due from them as commissions upon the sale of certain horses.

The following facts are undisputed: Prior to February 19, 1904, appellee, a farmer, residing near Argenta, Illinois, visited the stock farm of appellants, who were importers and breeders of draft horses at Verona, Illinois, with a view to purchasing a stallion. He failed to find one that suited him, and on February 19th, while returning home, he met one J. E. Nye on the railroad train. In the course of a conversation with Nye he learned from him that he desired to purchase a first-class stallion. Appellee thereupon described "Born Royalty" and "Nottingham Herald," two of the stallions he had seen at appellants' stock farm, and gave Nye the price asked for the former horse. He also requested Nye to go to appellants' stock farm and inspect the horses. Shortly thereafter, and before he had reached his home, appellee wrote and mailed to appellants, from Champaign, Illinois, the following letter:

"CHAMPAIGN, ILL., Feb. 19, 1904.
FINCH BROS., Verona, Ill.

DEAR SIRS:—I met a man on the train that I think would buy Born Royalty. I am not home as yet; am in Champaign. I will go on home tonight. * * * Now, in regard to this deal: Would there be $100.00 commission if I sent this man up and you made a sale to him? I think he would do business if he did not go too low on his feet. Let me hear from you. Address me at Argenta, Ill. Respectfully yours,
ARTHUR BETZ."

On the following day Nye wrote to the appellants the following letter which was received by them on February 23rd:

"THOMASBORO, ILL., Feb. 20, 1904.
FINCH BROTHERS, Verona, Ill.

GENTLEMEN:—I met a gentleman yesterday on the

train and he was telling me you had some Shire stallions for sale. Will you please send your catalogue, or if you haven't them catalogued send me a description and lowest prices, 1/3 cash, balance in 1 and 2 years, will buy a good Shire stallion if the price is right. Awaiting your reply, I am respectfully yours,

J. E. NYE."

On February 22nd, appellants replied to appellee's letter as follows:

"VERONA, ILL., Feb. 22, 1904.

MR. ARTHUR BETZ, Argenta, Ill.

DEAR FRIEND:—Yours received, and in reply will say that we will give you $100.00 commission on any horse you may sell for us. Did you price Born Royalty to him; if so at what price? We would not like to sell him for less than $1600.00 and give $100.00. However, we would take $1400.00 cash. Let us hear from you.

Yours truly,

FINCH BROS."

To which letter appellee replied as follows:

"ARGENTA, ILL., Feb. 24, 1904.

FINCH BROS., Verona, Ill.

DEAR FRIENDS:—In answer to yours of the 22nd will say that I told this party that he could buy Born Royalty for $1500.00 spot cash. I told him you would probably ask him $1800.00 for him but that if he had $1500.00 cash I thought he could buy him. This man's name is J. E. Nye and he is in the real estate business at Thomasboro, Ill., about 10 miles north of Champaign. I understand that he owns property in Champaign. Now this party has promised me that he would go and see your horses, if he does not come soon you had better look him up. I think it would be better for you to see him as I left the impression that I was not interested in the sale, and if I went to see him at once he might suspicion that I was a capper or an agent, etc., and not go. I think that if he comes up you can do business with him. I have an uncle who is acquainted with him and together I think we can do business. Very respectfully,

ARTHUR BETZ."

After the receipt of Nye's letter, one of appellants first communicated with him by telephone and then visited him at his home and induced him to go to Verona and look at the horses. He subsequently, on March 7, 1904, bought the stallions "Born Royalty" and "Nottingham Herald," for the sum of $1,900. By the terms of sale appellants warranted them to be average breeders and agreed that in case either proved not to be such, to replace him with another stallion of equal value.

"Born Royalty" failed to fill the warranty, and was returned to appellants, who replaced him with another stallion. Upon learning of the sale of the horses, appellee wrote to appellants, demanding the sum of $200, which he claimed was due him as commissions. Appellants refused to pay the same, claiming that they had effected the sale themselves. Some time thereafter appellee prepared and procured Nye to sign a letter addressed to appellee, purporting to set forth the facts relating to the transaction as Nye knew and understood them, and to which it was stated, he was willing to testify. The facts as given in the letter differed in several particulars from the testimony given by Nye upon the trial. The letter also contained the statement that, "I consider that you were the cause of me purchasing these two horses as it was from you I first obtained the information in regard to them." The court, over the objections of appellants, admitted the foregoing letter in evidence, as Exhibit "5."

Appellee testified on the trial that when he visited appellants' farm, appellant, Jesse Finch, told him that if he would send anybody up there who would buy "Born Royalty," or anything else they had there, he would pay him a commission, and that in his conversation with Nye, he told him, Nye, that the price of "Born Royalty" was $1,500, but that he could be bought for $1,400, and further that Nye told him he would go down and see the horses. Nye, when called

by appellee, testified that the price appellee gave him on Born Royalty was $1,700 or $1,800, but that he said the horse could be bought for $1,500. He further testified that he did not think he told appellee that he would go to see the horses, and that he did not mention, appellee's name to appellants in connection with the transaction. Appellant, Jesse Finch, testified that he never had a conversation with appellee in which he agreed to or did employ him or agreed to pay him for selling any of their property, or that he ever knew that Nye was the person to whom appellee referred in his letter.

It is first contended by appellants that inasmuch as appellee, as they claim, had no authority to sell the horse at the time he had the conversation with Nye, and did nothing thereafter to further a sale, such conversation could not properly be regarded as the procuring or inducing cause of the sale afterward consummated, in other words, that one who merely puts another upon inquiry as to property in the market, prior to his employment to sell, and does nothing thereafter, is not entitled to compensation, although a sale is effected through efforts made by him prior to his employment as agent. Were it not for the fact that there is evidence tending to show an agreement by appellants, made at the time appellee was at Verona, that in case he sent any one there who bought horses, they would pay him for doing so, there would be force in such position. While the evidence as to whether or not such agreement was entered into was conflicting, the question was one for the jury, who were the sole judges of the credibility of the respective witnesses, and of the weight to be given to their testimony, and we are not at liberty to disturb their finding upon the question. If, as claimed, by appellee, appellants agreed to pay him commissions in case he sent them buyers for any of their horses, and through the instrumentality of appellee, Nye was brought to the notice of appellants as a possible pur-

chaser and a sale to him was thereafter accomplished, such efforts on the part of appellee were the efficient and procuring cause of such sale, and appellee, by reason thereof, became entitled, under his agreement with appellants, to commissions for his services. The fact that appellants negotiated the sale themselves, without the further aid of appellee, or that they may not have known at the time that Nye was the person referred to in appellee's letter, is unimportant so long as such facts existed and they were not misled by appellee. Adams v. Decker, 34 App. 20; Hafner v. Herron, 165 Ill. 250. Moreover, the jury were not unwarranted in believing that appellants knew when they received the letter from appellee that Nye was the person referred to by him in his letter. The two letters were written at practically the same time, and both refer to a meeting and conversation upon a railroad train, in relation to the same class of horses which appellants had for sale.

The fourth instruction given at the request of appellee told the jury, in substance, that the fact that the horses were sold upon the condition that if they or either of them failed to prove good breeders they could be returned and replaced with others of equal value, and that in accordance with such agreement one of said horses was returned to appellants and by them replaced with another, would not deprive appellee of his right to recover commissions. The contention of appellants that the court erred in giving such instruction is without merit. The fact that appellants warranted the horses to be fit for the purpose for which they were offered for sale and purchased by Nye did not render the sale conditional as claimed. The sale was, nevertheless, an absolute one. The instruction in question correctly stated the law, and appellants' fifth instruction to the contrary was properly refused.

It is further insisted that the conduct of appellee in stating to Nye that while the price of Born Royalty

was $1,500, he might be bought for $1,400, was such a breach of faith toward appellants as to deprive him of the right to compensation. Such contention is equally untenable. The agreement between the parties as testified to by appellee, was not that he was to send customers for horses at certain fixed prices, but was merely to interest persons who would purchase, presumably upon terms satisfactory to appellants. This he did and any statements he may have made as to what the horses could be purchased for were, under the circumstances, unimportant.

We think, however, the complaint that the court erred in the admission in evidence of Exhibit 5 is well founded. If the witness, Nye, unexpectedly to appellee, gave testimony which was at variance with the statement in question, appellee had a right to call his attention to such statement for the purpose of refreshing his memory or awakening his conscience. It was not proper to introduce the same evidence either for the purpose of having the jury consider it as independent evidence or for the purpose of impeaching the witness. Chicago City Ry. Co. v. Gregory, 221 Ill. 591. We would not, however, be inclined to hold that the admission of the exhibit was so prejudicial to appellants as to warrant a reversal in so far as it purports to state facts; the variance between such statements and the testimony given by Nye upon the witness stand not being material in the light of the foregoing views.

But this is not so as to the belief therein expressed by Nye that appellee was the cause of his having purchased the horses. The evidence upon the crucial question as to whether appellants had prior to the receipt of appellee's letter, promised to pay him commissions in the event that he sent purchasers, was close and conflicting, and we are not satisfied that under such circumstances the portion of the letter referred to did not influence the jury, notwithstanding the trial court instructed them to disregard the same.

478 APPELLATE COURTS OF ILLINOIS.

VOL. 134] Union Drain. Dist. No. 1 v. Drain. Dist. No. 1.

For the error indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*