## Chicago City Railway Company v. Myra J. Rublee.

### Gen. No. 13,371.

1. DAMAGES—*when question of, for jury.* The question of damages within reasonable limits is peculiarly one for the jury to determine.

2. EVIDENCE—*when exclusion of improper, does not preclude reversal.* When incompetent evidence is admitted on the promise that it will be made competent by the admission of other evidence, which other evidence is not introduced, the action of the court in striking out such incompetent evidence does not cure the error unless the reviewing court can say that it is satisfied from the result of the trial that the jury paid no heed to it.

3. HYPOTHETICAL QUESTION—*appropriate form of.* In an action on the case for personal injuries, the proper question to ask an expert witness, after reciting or hypothetically stating to him the manner and character of the accidental injury in question, is whether, in his opinion, the conditions found or recited to him were the result of the recited or supposed accident, rather than whether such an accident might or could have produced it.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed October 3, 1907.

**Statement by the Court.** Appellee, the plaintiff below, obtained a judgment against the appellant, the defendant below, in the Superior Court of Cook county on February 24, 1906, for $1,500. The judgment was rendered on the verdict of a jury, after a motion for a new trial and a motion in arrest of judgment had been denied by the court. The declaration in various counts alleged an injury to the plaintiff on May 22, 1904, while she was a passenger on a cable car belonging to and operated by the defendant, by reason of a negligent starting of the car suddenly and violently near the intersection of Cottage Grove avenue and Oakwood boulevard in Chicago. The plaintiff being then about to alight, it is charged, in accordance with her desire so to do and following a customary signal to the conductor to stop the car, and after the car had stopped, or had so slackened

its speed as to come almost to a standstill, was by the jerk of this sudden start, thrown to the ground and injured.

The defendant pleaded the general issue.

This court, under adequate assignments of error, is asked to reverse the judgment, first, because the verdict is against the manifest weight of evidence, second, because of errors in the rulings upon the admission of evidence, and third, because of the refusal of a proper instruction tendered by the defendant.

WILLIAM J. HYNES, JOHN E. KEHOE and WATSON J. FERRY, for appellant; MASON B. STARRING, of counsel.

MARVIN E. BARNHART, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

We fail, after a careful and detailed consideration of the evidence in the record, to find any justification for reversing this judgment on the ground that the verdict of the jury, so far as it fixed a liability on the defendant, was against the weight of the evidence. The evidence was conflicting, but the questions raised by it and whether it proved the negligence charged in the declaration were fair questions for the jury. As, however, we are of the opinion that the judgment must be set aside and the cause remanded for a new trial for error in the admission of evidence affecting the question of damages, we must forbear to discuss the evidence bearing upon the accident, which will probably be submitted to another jury. Nor do we mean to express an opinion that the verdict was excessive for the injuries which a jury might reasonably have found from the evidence, properly admitted and properly before them, the plaintiff suffered from the accident. The question of damages within reasonable limits is, however, peculiarly one for the jury to determine. In our view of this record there was evidence improperly admitted and heard by the jury, which might, as we think, have influenced them to swell the damages they otherwise would have assessed, and therefore we should be usurping the func-

C. C. Ry. Co. v. Rublee.

tions of the jury if we should say that irrespective of that evidence, the damages actually assessed were no more than proper compensation for the injuries proven, and on that ground affirmed the judgment.

The evidence which we deem improperly admitted was the testimony of Dr. Cubbins as to the displacement of the kidneys, as to the retroversion of the uterus, and as to the aneurism of the abdominal aorta from which he swore as the result of his examination of the plaintiff during the trial in December, 1905, he found her suffering.

The testimony as to the displacement of the kidneys and as to the retroversion of the uterus was stricken out on the voluntary motion of plaintiff's counsel, and so far as the kidney trouble at least was concerned, after a ruling by the court denying a motion to strike it out made by the defendant.

By instructions 12 and 13 respectively, the jury were forbidden to take into consideration the said testimony of Dr. Cubbins as to "the condition and position in which he found the plaintiff's uterus" and as to "the plaintiff's kidneys, and what he found in reference thereto"; but the case is one in which we cannot say with certainty that the testimony which the jury were told to disregard had no effect on their minds. They may have disregarded it as they were told to do, but it was admitted and heard by the jury before such instruction was given to them, and, as the Supreme Court said in Chicago State Line Railway Company v. Kline, 220 Ill., 334, "In such a case the harm is often done before the ruling, and a correct ruling is not always a sufficient antidote." And as it is said in Chicago City Railway Co. v. Gregory, 221 Ill., 591, adopting and approving the language of the Supreme Court of Michigan, "An impression once made upon the mind of a juror, no matter how, will have more or less influence upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be or how carefully he may have been instructed by the court not to permit such incompetent matter to influence him or have any bearing on the case, it will be difficult, if

not impossible, for him to separate the competent from the incompetent, or to show to what extent his impressions or convictions may be attributed to that which properly should not have been permitted to come to his knowledge."

The appellee claims that the reversal of a judgment for the introduction of incompetent testimony, which was afterward ruled out, has never been resorted to if the testimony introduced might have been made competent by a connection promised when its admission was allowed, but never made. In such a case it is insisted that the subsequent ruling excluding it and instructing the jury to disregard it completely remedies the mistake in admitting it.    It is only in cases, counsel say, in which the testimony "introduced was wholly incompetent and illegal and could in no wise be made competent and admissible from any standpoint" that such action is or should be resorted to.    We see no ground in reason for such a distinction, and we do not believe one can be found in authority.

The test is rather that suggested by appellant in the rule which it contends for, that "Where incompetent and prejudicial testimony is erroneously admitted its effect will be to work a reversal, even though the court afterwards ordered it stricken from the record, unless the reviewing court can say that it is satisfied from the result of the trial that the jury paid no heed to it."    This seems to have been the view adopted by the Appellate Court very early in its existence in Smith v. Kinkaid, 1 Ill. App., 620.

The incompetency and impropriety of the evidence in regard to the alleged retroversion of the womb and displacement of the kidneys was in effect conceded when the plaintiff's counsel agreed that it should be excluded on the ground that the connection with the accident promised had not been made.

It would establish a bad precedent to allow counsel to produce before a jury testimony which is incompetent unless a subsequent connection is made, on the promise to make that connection, then disclaim his ability to make it, agree that the testimony may be stricken out, and fall back on a sup-

posed rule that since the unmade connection would have rendered the evidence admissible, there is no remedy for the beaten party even though a reviewing court is not satisfied that it did not affect the verdict.    Undoubtedly cases may occur when such a connection may be thought possible and probable when the evidence afterward stricken out is offered and may afterwards prove impracticable, and in such a case the operation of the rule suggested by us might seem harsh.

But appellee's counsel can hardly claim that this is such a case.    Dr. Cubbins had never seen the appellee until, during the trial, her counsel secured her examination by him for the purpose of making him a witness.    The family or attending physician of the appellee was present and differed from Dr. Cubbins in diagnosis.    It can hardly be presumed that counsel was not aware of what he could prove by his expert witness, and whether or not the necessary connection could be made between the testimony offered and the accident.

We are unable to say that the jury's estimate of the damages suffered by the plaintiff may have not been affected by the improper testimony admitted and afterwards stricken out, and this, in our opinion, is sufficient to require from us a reversal of the judgment.

Counsel for appellee, however, argue that while the testimony about the plaintiff's womb trouble was properly excluded, that concerning the displacement of her kidneys was admissible, although inconsiderately allowed to be stricken out.    Aside from the question whether this, in view of the conceded impropriety of the evidence of the womb difficulty, should make any difference in our decision, we cannot assent to this proposition.    Neither the testimony of Dr. Cubbins which was stricken out concerning the plaintiff's kidney troubles, nor that which was allowed to stand concerning the alleged aneurism of the abdominal aorta which Dr. McGowan, the plaintiff's attending physician, said in his opinion did not exist, was material nor proper in the absence of a further connection of it than was made with the injury involved in this suit.    The examination in which these alleged abnormal

conditions were found was made during the trial, nineteen
months after the accident.   Neither the plaintiff herself, her
attending physician at the time of the injury, nor any wit-
ness but Dr. Cubbins, had testified to symptoms which looked
towards conditions like these as resulting from the acci-
dent; and although Dr. Cubbins testified that such an in-
jury as the plaintiff suffered in this accident *could* produce
dislocation and bilateral movement of the kidneys, he did not
testify that in his opinion there was any connection between
the hypothetical accident recited to him and this dislocation
and movement, while in the case of the still more serious
alleged aneurism of the abdominal aorta (which he testified
he thought would be fatal) the only pretext of connection
with the accident made was in his entirely irresponsive an-
swers—"It takes an injury to produce the lesion," and
"Trauma is essential to the production of any rupture of a
blood vessel."   These answers were followed on cross-ex-
amination by a statement that other falls which the plaintiff
was proved to have suffered, disconnected with the accident
in question, were of the kind of falls that usually cause dis-
placement of the kidneys and could produce an aneurism of
the abdominal aorta *"if there was any previous disease to
account for it."*

This court in City of Chicago v. Didier, 131 Ill. App.,
406, and the Supreme Court in the same case, 227 Illinois,
571, has decided that where the manner in which the injury
was received is admitted, as in the present case, the proper
question to ask an expert witness, after reciting or hypo-
thetically stating to him the manner and character of the ac-
cidental injury in question, is whether, in his opinion, the
conditions found or recited to him were the result of the
recited or supposed accident, rather than whether such an
accident might or could have produced it.   It is entirely
plain that an answer to the latter question must be usually,
if not always, of the smallest possible value, while the answer
to the proper inquiry by one "who has given the matter spe-
cial study, and with which jurors and others engaged in the
ordinary avocations of life are unfamiliar," may be of almost

controlling force, although of course "such an opinion is not conclusive," and "it is for the jury to determine the weight and value of such opinions when considered in connection with all the evidence in the case." City of Chicago v. Didier, 227 Ill., 571–580.

There is an objection made by appellant to an answer of the witness Grunn, "That the car seemed to give a jerk and it threw her off." Appellee's counsel concede that this answer "may have been technically inadmissible as stating a conclusion," but we agree with him that it is not a matter of importance on which a reversal should be based.

Nor should we reverse the judgment for the refusal to give the instruction, refusal to give which is complained of by the appellant, although the proposed instruction does not seem to us to be subject to the implied criticism of appellant that it makes "standing upon the platform of a car preparatory to alighting contributory negligence, as a matter of law." On the contrary it leaves to the jury the questions whether the plaintiff so stood, whether her fall and injury were due to that fact, and whether so standing was under the evidence a want of ordinary care on her part. Nevertheless we do not think its refusal was reversible error.

But for the errors before detailed in the admission of Dr. Cubbins' testimony, the judgment is reversed and the cause remanded to the Superior Court.

*Reversed and remanded.*