## John Tijan, Appellee, v. Illinois Steel Company, Appellant.

### Gen. No. 5333.

1. EVIDENCE—*when admission of substantive will not reverse.* To permit an injured member to be exhibited to the jury is discretionary with the court and unless an abuse of that discretion is shown a reversal will not be awarded.

2. EVIDENCE—*what competent to ask unfavorable witness called by party.* It is proper to ask a witness whom a party has called and who has appeared unfavorable, not by way of impeachment but to refresh memory and awaken conscience, as to statements made by him to the opposite party.

3. EVIDENCE—*when admission of improper will not reverse.* In the absence of objection made in the trial court the admission of improper evidence will not reverse.

4. TRIAL—*practice where evidence is admissible for some and not for other purposes.* In such a case the proper practice is to request that the evidence in question be restricted to the particular purpose for which it is competent.

5. VERDICTS—*when not excessive. Held,* in an action on the case for personal injuries that a verdict of $18,066, was not excessive where it appeared that the plaintiff, prior to the accident, was a man 25 years of age, strong, healthy and earning from two dollars to $2.40 per day and that as a result of the accident his head was crushed, his jaws broken in three places so that they had to be wired together, his teeth loosened so that he could not eat meat or hard food, his spine twisted, three ribs broken on one side and four on the other, one lung solidified, one shoulder made five inches lower than the other, with the consequence that he suffered constant pain, became a physical wreck and unable to do any work.

Action in case for personal injuries.  Appeal from the Circuit Court of Will county; the Hon. CHARLES B. CAMPBELL, Judge, presiding.  Heard in this court at the April term, 1910.  Affirmed.  Opinion filed October 18, 1910.  Rehearing denied November 18, 1910.

**Statement by the Court.**  This is an appeal by the Illinois Steel Company from a judgment for the sum of $18,066, recovered by John Tijan, in the Circuit Court of Will county, for personal injuries alleged to have been sustained by appellee, through the negligence of appellant.  There were two trials in the Circuit Court.  At the first trial a verdict for $20,000 was returned.  A motion for a new trial was granted and at the second trial a verdict for $18,000 was returned, on which with interest the judgment appealed from was rendered.

The appellee was employed by appellant, as a member of a gang of men known as the sailor gang, repairing a reheating furnace in the billet mill in appellant's steel works.  A row of furnaces extended east and west.  South of the furnaces, and about a foot from them, a narrow gauge track extended east and west the entire length of the row of furnaces.  Upon this track, a small but heavy iron car or ingot buggy

about two feet high and four feet long was operated for carrying steel ingots. The space between the furnace and the car was from six to ten inches and there were some gear wheels, on the side of the car, that approached still nearer to the furnace. The car was moved by means of cables attached to each end that run over drums at either end of the track. The power was furnished by electricity that moved the drum at the end towards which it was desired to move the car. The power was applied and controlled in a cage or shanty about seven feet square that was elevated somewhere from ten to eighteen feet above the track. There were two appliances in the cage which controlled the power that moved the drums. The first appliance was an electric switch on the east side of the cage about four and a half feet from the floor for the purpose of cutting out the electric current from the controller. The switch was an ordinary fork switch about six or eight inches long and three or four inches wide; at the top or above the switch were two prongs or forks; the switch had a wooden cross bar and two copper bars at right angles with it which entered the forks to close the switch; the wooden handle was on the cross bar and the lever ends of the bars were pivoted. The switch would be opened by pulling the wooden handle so as to cause the connecting bars to come away from the prongs; the electrical connection would then be broken and the car could not be moved, except when the switch was closed. The switch was open when the wooden handle stood out from the wall or hung down, and was only closed when the handle was upright above the forks. The other appliance was the controller, which was a metallic box about two and one-half feet long from east to west with a lever extending out of the top which moved east or west. When the lever stood upright in the center, it was in a neutral position and the machinery did not move; if the lever was moved to the east, when the switch was closed, the car moved east, and if the lever was moved west from the center, the car would move west. The further east or west the

controller was moved, the faster the car would move in that direction. There was also a lift, a steam lever, a whistle, a bench seat and a stove in the cage; the lift was to work another gearing which was upon the buggy so as to remove the ingot off the buggy; the lever was to start the engine up to run the ingot off the rolls and the whistle was to call for another ingot. These appliances were all operated by the man in the cage in charge of the controller and switch. The accident happened between one and two o'clock on the morning of December 10, 1907, while work in the billet mill had been suspended for about twenty minutes previously for want of material. The appellee under the direction of his foreman was at work with his gang repairing one of the reheating furnaces while the billet mill was not running. The ingot buggy had been standing a few feet east of the furnace the gang was repairing. While the appellee was stooping down lifting an iron rail, between the narrow gauge track and furnace, the ingot buggy suddenly started west and caught appellee between the buggy and the furnace, rolling him in the narrow space and very seriously injuring him.

The counts on which the trial was had severally allege that the appellant was negligent, (1) in failing to. exercise reasonable care in providing reasonable safety appliances or safe guards for a certain electric switch; (2) in failing to make, promulgate and enforce reasonable rules in warning and prohibiting its servants and persons on its premises from moving, starting or interfering with electric switches, controllers or appliances when appellant's machinery was not in motion; (3) in failing to make, post or enforce rules preventing the assembling of servants in places where they were not employed; (4) in neglecting by its servants to move the switch a reasonably safe distance from the fork and to turn the switch in a downward position; (5) in failing to remove or blockade the car and prevent it from running on the track, and (6)

in permitting its servants to assemble in the cage. Each count averred that appellee was in the exercise of due care; that the injuries did not result from an assumed risk and were not caused by the negligence of a servant who was a fellow servant with appellee.

GARNSEY, WOOD & LENNON, for appellant; KNAPP & CAMPBELL and WILLIAM BEYE, of counsel.

JOHN W. D'ARCY, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

It is insisted that the court erred in not directing a verdict for the appellant and that the verdict cannot be sustained on the evidence. The evidence shows that the electrical appliances in the cage were operated in the night time by Leslie Fewtrell, a boy of the age of seventeen years, and William Erick of the age of sixteen years. Each of these boys operated and attended to the appliances for thirty minutes at a time, each spelling the other every thirty minutes; when one was operating the appliances the other was resting. The machinery had been shut down for want of material shortly after one o'clock A. M. while Fewtrell was in charge of the appliances. When the machinery was closed down Fewtrell moved the controller to the neutral position and opened the switch by moving the wooden handle so that it stood out from the wall. Erick took charge of the cage and the appliances in it at 1:30 o'clock A. M. with both the electrical appliances in a safe position, and Fewtrell then had thirty minutes during which he was off duty, resting, but remained in the cage. There were in the cage at the time besides the boys two men, Etheridge, an oiler, and Moriarty, who was sitting on the bench reading a newspaper. Moriarty moved over on the bench so as to let Fewtrell sit on the bench near the stove. It was too warm for Fewtrell there, and he moved the lever on the controller the entire distance to the west, and

sat upon the east side of the controller. There was proof also that two other men, Lincoln and Morgan, at times before the accident had rested or loitered in the cage. None of these four men, Etheridge, Moriarty, Lincoln or Morgan had any duty to perform in the cage and Moriarty left the cage before the accident. Fewtrell had a stick in his hand and seeing the movable part of the switch hanging apart from the forks, either accidentally or intentionally, touched the handle with the stick closing the switch, when the car shot forward catching appellee between it and the furnace and injuring appellee.

Fewtrell and Erick were employes of appellant and had charge of the dangerous machinery in the cage every alternate half hour from six o'clock to six o'clock, and do not appear to have had any other place than the cage to stay during the half hours they were resting.

Erick, the boy in charge of the machinery when the accident happened, testified that he saw Fewtrell move the controller from its neutral position and permitted it to remain, so that the car would move rapidly towards the west, if the switch should be closed, knowing that the sailor gang were at work on the furnace. Fewtrell drew pay for the entire time and must be held to be an employé of appellant during the time he was resting. Heldmaier v. Cobbs, 195 Ill. 172. Erick's act, in permitting Fewtrell to move the controller and letting it remain so that the closing of the switch would move the car, was the act of appellant. The appellant had committed to Fewtrell and Erick, its employes, the care of this dangerous machinery. The law imposes upon appellant the duty of safeguarding its employes and the duty of exercising ordinary care and diligence thereabout; the acts of Fewtrell and Erick, who were not co-employes with appellee, were the acts of appellant, and appellant is responsible for their acts in using the machinery or guarding it, while in charge of it, and the jury were

justified in finding the acts of Fewtrell and Erick to be negligence on the part of appellant.

The presence of loiterers in the cage, where the control of dangerous machinery was located, was proved to have occurred at times for several months. The safety of many employes was dependent upon the care of the operators of the machinery controlled from the cage. We are of the opinion appellant was negligent in not preventing its employes from spending their spare time in the cage and distracting the attention of its employes in charge of such dangerous machinery as the proof shows was controlled in the cage. We conclude that negligence was proved as alleged in several of the counts, and that the verdict and judgment are sustained by the evidence.

Appellant also contends that the court erred in admitting improper evidence offered on behalf of appellee. The appellee was permitted to exhibit to the jury the upper part of his body. The introduction of substantive evidence of that character is in the discretion of the court and is not ground for reversal. Swift & Co. v. Rutkowski, 182 Ill. 18; Pronskevitch v. C. & A. Ry. Co., 232 Ill. 136; C. & A. Ry. Co. v. Walker, 217 Ill. 605.

The court permitted counsel for appellee in their re-examination of Fewtrell and Erick to question them as to statements made by them to their employer on the day the injury occurred. Erick was still in the employ of appellant and by some of his answers showed a disposition to favor appellant. The re-examination was proper, not to impeach either of them, but to draw from them facts which had not been fully disclosed, and the questions were for the purpose of refreshing their memories and awakening their conscience. Chicago City Ry. Co. v. Gregory, 221 Ill. 591.

There was evidence admitted concerning the area covered by the plant of appellant and the number of its employes; this was admitted under the count alleging negligence in not making and promulgating rules and

was proper on that issue. The only objection made to this evidence was that it was immaterial. It was material as tending to show, that in such a plant, there should be rules requiring employes not to interfere with other employes in the discharge of their duties. Where evidence is admissible for some purposes, and is inadmissible for others, an objection is properly overruled. The proper practice is to request that it be restricted to the particular purpose for which it is competent. 9 Encyc. of Evi. 130.

A physician testified that "this man's anatomy had been driven out of place by impact of the car that struck him or whatever the object was that struck him." This answer was made in reply to a question to which there was no objection; neither was there any motion to exclude the answer.

While the answer was not proper appellant has not saved any question concerning it. However, there is no dispute as to what caused the injury nor the extent of it, hence the answer is not reversible error. There was also some evidence concerning the possession of a revolver by Fewtrell in the cage at another time. It was afterwards excluded. This evidence was improperly admitted, but it was harmless error.

It is contended the damages are excessive. Appellee was a man twenty-five years of age, strong, healthy and earning from $2 to $2.40 per day; his head was crushed, his jaws broken in three places so they had to be wired together, his teeth were loosened so that he cannot eat meat or hard food, his spine is twisted, three ribs were broken on one side and four on the other, one lung is solidified, one shoulder is made five inches lower than the other and he suffered constant pain. He cannot do any work and is a physical wreck because of the injury. We cannot say the judgment is excessive. Finding no reversible error, the judgment is affirmed.

*Affirmed.*