WARE *v*. THE PEOPLE.

Decided October 6, 1924.

Plaintiff in error was convicted of murder.

*Reversed.*

1. WITNESSES—*Contradiction by Party Calling.* A party cannot contradict a witness voluntarily called by him, by proof of his prior statements.

2. CRIMINAL LAW—*Witnesses—Discretion of Prosecuting Officer.* In criminal cases, the prosecuting officer may try his case in his own way, and may use his discretion as to what witnesses he will call so long as he acts in good faith.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. JOHN M. GLOVER, for plaintiff in error.

Mr. WAYNE WILLIAMS, Attorney General, Mr. HAROLD CLARK THOMPSON, Assistant, for the people.

*En banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

PLAINTIFF in error, defendant below, and so designated here, was convicted of murder of the second degree and sentenced to a term in the penitentiary of not less than ten years nor more than eleven years. He brings the case here for review.

It is assigned as error that the court erred in allowing the people to call, lead, cross examine and impeach witnesses Kenny, Peach and Cowns. It appears from the record that on February 20th, 1923, at the hour of ten o'clock p. m., in the washroom of the D. & R. G. Railroad shops, in the city of Denver, the defendant shot and killed Oscar Sibley. Both the defendant and the deceased were colored, and were employed at the time of the homicide at the D. & R. G. shops in Denver. The only eye witnesses of the homicide were Joseph Peach and Willie Cowns.

Andrew J. Reynolds, deputy district attorney, was called as a witness by the people and testified, inter alia, that he took statements the next day after the shooting from the witnesses Peach and Cowns; that the statements were taken down by a stenographer; that they were afterwards written out on a typewriter, and signed by the parties. He further testified as to the questions which had been propounded to the witnesses in the statements, and their answers thereto. The statements, made by these witnesses, testified to by Reynolds, differed materially from the evidence given by them upon the trial, and Reynolds' testimony was introduced for the purpose of impeaching them.

The question here presented seems never to have been determined in this jurisdiction. It is conceded that as a general rule a party can not directly impeach his own witness, but it is claimed by the people that there are important exceptions to this rule, and that the instant case

falls within one of the exceptions. On this question, the cases are far from being in harmony.

In 28 R. C. L. 644, it is said: "And in a number of jurisdictions it is held that a party who is thus taken by surprise on the examination of a witness called by him may not only interrogate the witness as to previous inconsistent statements made by him, but if the witness denies having made such statements may prove the same to impeach him. On the other hand, in many of the states the rule forbidding a party to impeach his own witness is deemed to preclude the admission of proof by him of previous inconsistent statements by the witness to avert the effect of unexpectedly unfavorable testimony given by him."

Among the cases holding that a party can contradict his own witness by proof of his prior statements, are the following: *Deering v. Cunningham,* 63 Kan. 174, 65 Pac. 263, 54 L. R. A. 410; *Murphy v. State,* 120 Md. 229, 87 Atl. 811; Ann. Cas. 1914B, 1117; *Selover v. Bryant,* 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. Rep. 349; *Lindquist v. Dickson,* 98 Minn. 369, 107 N. W. 958, 6 L. R. A. (N. S.) 727; *State v. D'Adame,* 84 N. J. L. 386, 86 Atl. 414, Ann. Cas. 1914B, 1109.

The following cases, among others, hold the contrary doctrine: *Hickory v. United States,* 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170; *Chicago City R. Co. v. Gregory,* 221 Ill. 591, 77 N. E. 1112, 6 Ann. Cas. 220; *Rhodes v. State,* 128 Ind. 189, 27 N. E. 866, 25 Am. St. Rep. 429; *Hall v. Town of Manson,* 99 Ia. 698, 68 N. W. 922, 34 L. R. A. 207; *Erdman v. State,* 90 Neb. 642, 134 N. W. 258, Ann. Cas. 1913B, 577.

We think the weight of authority, and the sounder and better rule, is that a party cannot contradict a witness, voluntarily called by him, by proof of his prior statements. But it is urged that the prosecution was compelled to call the two eye witnesses, and therefore should be allowed to impeach them. We are aware that there are cases holding that where the law requires, or the court

orders, a party to produce a witness, he may impeach him in the manner suggested. In such cases, the witnesses are not voluntarily called and their truthfulness and integrity are not vouched for by the party producing them. *United States v. Hall,* 44 Fed. 864; *Thompson v. Owen,* 174 Ill. 229, 51 N. E. 1046, 45 L. R. A. 682, and others.

But the prosecuting officer is not obliged to call a witness whose testimony he knows or has reason to believe will be adverse; he is not required to produce all witnesses whose names are endorsed on the information; he is not obliged to call all witnesses to the crime; he is not obliged to call the only eye witnesses to the crime, and he may try his case in his own way and use his discretion as to what witnesses he will call, so long as he acts in good faith. *Keller v. State,* 123 Ind. 110, 23 N. E. 1138, 18 Am. St. Rep. 318; *State v. Middleham,* 62 Ia. 150, 17 N. W. 446; *State v. David,* 131 Mo. 380, 33 S. W. 28; *Dillon v. State,* 137 Wis. 655, 119 N. W. 352, 16 Ann. Cas. 913; *Chicago City Railway Co. v. Gregory, supra; People v. Johnson,* 13 Cal. App. 776, 110 Pac. 965; *State v. Campbell,* 73 Kan. 688, 85 Pac. 784, 9 L. R. A. (N. S.) 533, 9 Ann. Cas. 1203.

In *Dillon v. State, supra,* the court said: "The rule requiring the state to call eye-witnesses in a homicide case became well established in the English system of jurisprudence at a time when a defendant himself was denied the right to testify or to call witnesses in his own behalf, and when he was even denied the right of counsel. The rule no doubt was adopted to mitigate the rigor and harshness of the situation in which an individual, bound to defend himself in a case involving capital punishment, was placed by the English system of jurisprudence as it was. While the reason for the rule has ceased to exist, some courts still adhere to the ancient doctrine. *People v. Deitz,* 86 Mich. 419, 49 N. W. 296; *Territory v. Hanna,* 5 Mont. 248, 5 Pac. 252. * * * To adopt it is to require the state to call a witness to establish its case whom the prosecuting attorney may believe is dishonest, or has been corrupted, and is will-

ing to commit perjury to aid the accused, either from motives of friendship, interest, or relationship. * * * Prosecutions in criminal cases should be carried on without malice and without desire or intent on the part of the prosecution to secure a conviction where the evidence does not warrant it. On the other hand, it would seem to be proceeding beyond the bounds of reason or of justice to require the state in all instances to call all eye-witnesses to the commission of an alleged crime. The weight of authority in this country is certainly against the contention of the defendant. * * * It is held in some jurisdictions that the right of the state to refuse to call an eye-witness in a criminal case is not arbitrary, but is subject to judicial discretion. * * * We do not think the claim here made, that Gibson was the only eye-witness to the entire transaction that lead up to the homicide, was sufficient to render it obligatory upon the state to call him, in view of the relations existing between him and the defendant and the apparently conflicting statements made by him in reference to the occurrence."

In the instant case, we think the prosecutor was not compelled to call Peach and Cowns to testify. He may have desired and honestly and in good faith believed that he was entitled to obtain a verdict of murder of the first degree with the death penalty imposed as the punishment. But even so, the people were not obliged to call Peach and Cowns as witnesses in view of the fact that it is apparent, from the record, the district attorney must have known before calling them that they would give adverse testimony; and furthermore, the impeaching evidence could not have the effect of establishing the truth of the subject matter of the statements, the effect thereof being only to detract from the weight to be given to the testimony of the witnesses. Moreover, it appears the district attorney was not surprised by the testimony given by these witnesses. The record shows that the witnesses, Peach and Cowns, had testified before the coroner's jury several days after their

statements were obtained by the officers on the evening of the homicide, and their testimony there was materially different from their statements previously made. The district attorney must have known what their evidence was before the coroner's jury. There is other evidence in the record showing that the prosecutor knew before these witnesses were placed on the stand that they would not testify in harmony with their previous statements. In fact no surprise was claimed by the district attorney.

In 28 R. C. L. 646, it is said: "So, in order to bring himself within the exception to the general rule against the impeachment of one's own witness it must appear that the party calling the witness was entrapped by his previous statements into putting him on the stand and was surprised by his testimony." The following cases are cited in support of the text: *In re Dolbeer,* 153 Cal. 652, 96 Pac. 266, 15 Ann. Cas. 207; *Fearey v. O'Neill,* 149 Mo. 467, 50 S. W. 918, 73 A. S. R. 440.

In Annotated Cases, 1914B, 1133, a large number of cases are cited to sustain the text above quoted from 28 R. C. L. 646.

In *People v. Crespi,* 115 Cal. 50, it was held: "The court refused to admit the impeaching evidence. This ruling is complained of. It was clearly right. It was an attempt by a party to impeach his own witness, not because that witness had given hostile evidence which had taken him by surprise, but because he did not admit what was sought to be elicited from him. Indeed, he was apparently questioned for the sole purpose of impeachment. Such practice is not permissible."

In *Moore v. Chicago, St. L. & N. O. R. Co.,* 59 Miss. 243, it was said: "While we recognize the right of a party who has been entrapped into introducing, and is surprised by the testimony of an unfriendly witness, to impeach his credibility by giving evidence of other and different statements made by him, we nevertheless think it was error to permit it to be done in this case, for the reason that no

showing was made by the plaintiff, by his own affidavit or otherwise, that the testimony of the witness operated as a surprise on him, and because we think it fairly inferable from the other facts shown in the record that the plaintiff and his counsel anticipated that the witness would testify in effect as he did, and introduced him after they had received information that he had declared his intention not to adhere to the statement of the facts as contained in his letter.   *   *   *   But where the facts or circumstances suggest the presumption that the party introducing a witness does so with knowledge of the fact that his testimony will not be in accordance with those things which he is professedly introduced to prove, some evidence at least of surprise ought to be required to overcome the presumption, for otherwise the exception would absorb the rule."

We are of the opinion that the court erred in admitting the impeaching testimony of Reynolds, and for this the case must be reversed. It is not necessary to consider the other assigned errors.

Reversed and remanded.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE DENISON not participating.