No. 14,860.

HAMBY *v.* THE PEOPLE.
(128 P. [2d] 993)

Decided June 29, 1942.   Rehearing denied September 14, 1942.

Mr. A. T. STEWART, Mr. I. E. SCHACHET, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. MCAULIFFE, Assistant, Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THERE having been considerable delay in the disposition of this cause here, fairness justifies the statement that it only came within the individual responsibility of the present Chief Justice a short time ago and was assigned to the writer May 1 last. ·

Plaintiff in error, hereinafter referred to as defendant, was found guilty of murder in the first degree and, in conformity with the jury's action, was sentenced to life imprisonment. To review that judgment he prosecutes this writ and assigns twenty-four alleged errors. Many

of these are so wholly unsupported as to require no notice. The others are fairly condensed as follows: (1) The evidence does not support the judgment. (2) Defendant was compelled to give evidence against himself. (3) The prosecuting attorney cross-examined his own witness. (4) Exhibit B was erroneously admitted. (5) Evidence of an experiment was erroneously admitted. (6) The court did not properly instruct the jury. (7) The district attorney indulged in prejudicial argument to the jury.

A brief recital of facts is essential to an understanding of these assignments and our conclusions thereon. The following are either undisputed or established by such evidence as amply supports the verdict. There are 240 pages of the record, a typewritten abstract, of little assistance as such, of 113 pages, and more than 100 pages of briefs. The story was presented piecemeal, and neither side has seen fit to put it together in any logical order. The task has been left entirely to us.

About 8:00 p.m. on June 22, 1937, George Carnes was shot at his filling station in Walsenburg in an attempted holdup. He ran from the station a few steps, staggered back and fell in the doorway. A physician and an officer were promptly called and found him unconscious. He was taken to a hospital where he died early the following morning. Meantime, having regained consciousness, he discussed the occurrence with several persons, but did not identify his assailant. Witnesses saw one, apparently the murderer and who resembled defendant, run from the station. The next day defendant said to an acquaintance, "I killed a man last night." About a week later he repeated that statement as a part of a threat against another whom he engaged in a physical encounter. Thereafter he went to the police station with the avowed intention of giving himself up, but was taken out by his sisters. On the dresser in his room was found a box of cartridges, of the same character as that used to kill Carnes, from which several were missing. To a

fellow prisoner in jail he stated, "I killed Carnes." When arrested near Eastland, Texas, where he was going under the name of Shaw, he neither admitted nor denied the charge against him, although engaging in a conversation about it which logically called for some statement. On trial his chief defense was an alibi, i.e., that he was in a hotel in Walsenburg listening to a broadcast at the time of the shooting. His mother and sister asked a state's witness to so testify. During the broadcast, to which defendant and others were listening, defendant and one Dan Matteo left and drove in an automobile to the vicinity of the Carnes filling station. There defendant left the car, telling Matteo that he would return immediately. He did so shortly, and they drove back to the hotel. The assassin was a man of peculiar size and physical characteristics and had unusual eyes. Defendant did not take the stand but was, of course, present at the trial and observed by the jury, and walked across the courtroom at the request of a witness who thereby identified his appearance with that of the murderer. His alibi was well supported but there was sufficient evidence to contradict it.

■ 1. It thus appears the verdict was amply supported. This is one of the strongest cases justifying the rule that we will not reverse where disputed facts are supported by conflicting testimony, because those who hear and see the witnesses constitute the only competent tribunal to find the truth and the trial judge is always present to correct any evident error or abuse in the discharge of that duty by the jury. This record seethes with palpable perjury, particularly on the subject of alibi. It admits of no explanation or reconciliation. On which side was falsehood and on which truth we leave to the judgment of those vested by law with the power and obliged by their oaths to resolve the question.

■ 2. A state's witness who had seen the killer apparently fleeing just after the fatal shot was fired

described his appearance. Thereupon the district attorney asked defendant to stand and the witness asked him to walk, both of which he did. This, it is now argued, constituted a compulsion of defendant to give evidence, and was a violation of his constitutional right. It seems the law is otherwise. Whatever the rule, it is clear that where, as here, the exhibition was simply on request, not order, was voluntary, and no objection was made, error cannot be predicated thereon. 16 C.J., p. 568, §1100.

■ 3. The witness Matteo told the story of his trip with defendant as above outlined, without variation, on at least five different occasions, in the hearing of different people, and signed a written statement, exhibit B, to the same effect. On the stand for the people he admitted all this, admited that he had not been bribed, coerced, cajoled, threatened, or even urged to do so, but now asserted that it was false in its entirety and that defendant never left the broadcast until it was finished, the theory being that the killing must have taken place during that period. Thereupon the district attorney sought and obtained permission to cross-examine on the ground of surprise, and did so. In such case cross-examination is proper and almost imperative, and it cannot be disputed that of such instances this is one of the grossest. 70 C.J., p. 1028, §1226; 16 C.J., p. 568, §1100; 22 C.J.S., Criminal Law, §652; *Weiss v. People,* 87 Colo. 44, 285 Pac. 162.

■ 4. Said witness signed and delivered to the district attorney a writing, exhibit B, embodying the material facts so repeatedly stated orally, and in no important particular varying therefrom. This was admitted in evidence over defendant's objection. We need not here inquire whether the alleged majority rule laid down in 28 R.C.L., p. 654, §238, relied upon by counsel for defendant, is the correct one, and if so, whether here applicable. It so clearly appears that under the facts of this case no prejudice could have resulted we pass the point. 70 C.J., p. 1059, §1243.

■ 5. The sheriff, accompanied and guided by the witness Matteo, conducted an experiment in driving from the hotel where the broadcast occurred to the point where Matteo asserted he and defendant had stopped on the night of the murder, went to the filling station, stopped there for a few moments, returned to his car and thence to the hotel, following the route alleged by Matteo to have been taken by himself and defendant on the night of the killing and proceeding as nearly as possible as to details as had Matteo and defendant, and making the journey, as the sheriff testified, in approximately ten minutes. The evident purpose was to show that defendant may have been present at the hotel during a portion of the broadcast, as testified to by certain witnesses, and still have had time to be at the Carnes filling station at the time the fatal shot was fired. The sheriff was not cross-examined, but it is contended that the objection to his testimony should have been sustained because conditions were not identical and the time of day was not the same. Evidence of such experiments is generally admissible, and that admission rests primarily in the discretion of the trial court. Conditions should be so similar as to give some probative effect to the testimony. If these are in doubt they can easily be tested by cross-examination. Guided by these rules, we detect no error in the admission of this evidence. Its weight was for the jury, and the fact, if it be a fact, that one drive was made at night and the other in the daytime, is not sufficient to exclude. 16 C.J., p. 563, §1094, 22 C.J.S., Criminal Law, §645; *People v. Phelan*, 123 Cal. 551, 56 Pac. 424.

■ 6. Counsel for defendant tendered two instructions only which were refused, one on the credibility of witnesses, the other defining murder in the first degree. Both subjects were fully covered by instructions given and repeatedly approved by this court. There were eighteen instructions in all, to six of which counsel for defendant objected. All but one of these

objections must be disregarded as grossly defective or clearly insufficient and unsupported, and that one is doubtful. It is said number eight, which makes some reference to "circumstances," fails to "state the law or all the law and is insufficient and does not elaborate, * * * there is no explanation or instruction given as to circumstances or what is meant by 'circumstances.' " The argument on this point is that the court should have instructed on "circumstantial evidence" because "most of it" was of that character. Counsel tendered no such instruction, and it is apparent from our statement supra that it was not essential. If counsel deemed a definition of circumstances necessary they should have tendered such, and they did not. We consider it superfluous. *Mitchell v. People*, 76 Colo. 346, 232 Pac. 685, 40 A.L.R. 566; *Gavin v. People*, 79 Colo. 189, 244 Pac. 912.

7. Seven assignments are based upon alleged improper statements of the district attorney in his closing argument. Some of these are not covered by objections and others are so clearly without merit as to require no notice. One might have been more serious. The district attorney made reference to three instances of prosecution and conviction which he asserted tended to diminish crime. Neither names nor cases were specifically stated and no details were given. One was a case of statewide notoriety, which falls under the general rule permitting such references. 16 C.J., p. 899, §2245, 23 C.J.S., Criminal Law, §1096. The other two seem to have been of a local character, and fall in a class generally disapproved, but so far as we are advised never held, standing alone, to constitute reversible error. Id. However, such objections must be promptly made to be available. 16 C.J., p. 914, §2267, 23 C.J.S., Criminal Law, §1113; *Webb v. People*, 97 Colo. 262, 49 P. (2d) 381. Here we have covering this point only a blanket objection entered at the close of the argument. It is of doubtful merit at best, but if otherwise good was waived.

Finding no reversible error in the record, the judgment is affirmed.

MR. JUSTICE BOCK and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE JACKSON not having heard oral argument does not participate.