## No. 26517

## The People of the State of Colorado v. Robert E. Hawthorne

(548 P.2d 124)

Decided April 5, 1976.

John P. Moore, Attorney General, John E. Bush, Deputy, J. Stephen Phillips, Assistant, for plaintiff-appellee.

Davies and Saint-Veltri, Joseph Saint-Veltri, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The defendant, Robert E. Hawthorne, was convicted by a jury of second-degree assault, 1971 Perm. Supp., C.R.S. 1963, 40-3-203(b),[1] and was sentenced to the state penitentiary. He asserts two primary grounds for reversal. First, he asserts that reversible error occurred when the prosecution was allowed to impeach one of its own witnesses with a written statement which the witness gave to the police. As a second ground for reversal, the defendant asserts that the jury was not properly instructed on the issue of self-defense. We affirm.

Shortly after midnight on May 27, 1973, Jeffrey DeWitt entered the San Francisco Book Exchange and was examining pornographic publications which were on display. He was asked by the counter clerk, Michael S. Berg, to pay a fifty-cent "browsing fee" or leave the premises. DeWitt, who had spent the entire evening drinking beer, attempted to debate the constitutionality of the browsing fee and refused to leave. At that time, Hawthorne, who was the owner, came into the book exchange. After Berg told Hawthorne that DeWitt would not pay the browsing fee, Hawthorne confronted DeWitt and said, "Look, punk, pay the fifty-cent browsing fee or get your ass out of here." DeWitt persisted in his argument about the fee and, according to several witnesses, took a swing at Hawthorne. Hawthorne then went behind the counter and obtained a can of mace and a pistol. DeWitt claimed that he told Hawthorne that he didn't want to hassle with him and attempted to leave. Defense witnesses disputed the fact that DeWitt was willing to leave.

In any event, an altercation occurred, and DeWitt was sprayed with mace and pushed toward the door. DeWitt seized a standing ashtray, half-filled with sand, and hurled it at Hawthorne. Hawthorne reacted immediately, striking DeWitt on the side of the head with his pistol. In the ensuing scuffle, a shot was fired, and while DeWitt was on the floor, Hawthorne fired another shot, hitting DeWitt in the leg. When DeWitt was taken to the hospital, an examination established that he had been shot twice. A bullet wound was found in DeWitt's arm and another in his leg.

The testimony before the jury was conflicting as to the events immediately preceding the moment that Hawthorne first shot DeWitt. Defense witnesses testified that DeWitt threw a haymaker at Hawthorne before Hawthorne went for the mace and the pistol. DeWitt denied using any force until after he was sprayed with mace and also claimed that he threw

---

[1] Now section 18-3-203, C.R.S. 1973.

the ashtray at Hawthorne solely to avoid further injury.

The jury was instructed on the self-defense issue. Resolution of the conflicts in the evidence on this issue lies within the province of the jury. The conviction must be affirmed if reversible error did not occur in the admission of evidence or in the court's instructions to the jury.

## I.
## Prior Inconsistent Statement

The defendant contends that the trial court erred in permitting the prosecutor to use a prior written statement of Michael S. Berg as a means of impeaching or discrediting his testimony. Berg was a prosecution witness. His handwritten statement prepared for police investigators related to two issues: (1) whether Berg actually saw DeWitt swing at Hawthorne prior to the time that the mace was used; and (2) whether Hawthorne's pistol discharged when he struck DeWitt on the side of the head. The defendant asserts that a party may not impeach his own witness unless surprise can be shown or the witness is hostile. *See Ware v. People,* 76 Colo. 38, 230 P. 123 (1924). It is undisputed that the prosecutor failed to establish hostility or surprise.

The general rule which prohibits counsel from impeaching his own witnesses has not been universally followed. Exceptions have been created in nearly every jurisdiction, and many legal scholars have criticized the rule. *See United States v. Freeman,* 302 F.2d 347 (2d Cir. 1962); *see also Johnson v. Baltimore & Ohio R.R. Co.,* 208 F.2d 663 (3d Cir. 1954); *McCormick on Evidence* § § 38-39 (1954 Ed.); *Uniform Rules of Evidence,* Rule 20 (1954); and Rule 607 of the *Federal Rules of Evidence.*

Our legislature enacted a statute which abrogates the rule and provides as follows:

"*39-10-201. Inconsistent statement of witness — competency of evidence.* (1) Where a witness in a criminal trial has made a previous statement inconsistent with his testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which his testimony and the inconsistent statement relate, if:

"(a) The witness, while testifying, was given an opportunity to explain or deny the statement, or the witness is still available to give further testimony in the trial; and

"(b) The previous inconsistent statement purports to relate to a matter within the witness' own knowledge." Colo. Sess. Laws 1972, ch. 44, 39-10-201, at 238.[2]

---

[2] Now section 16-10-201, C.R.S.1973.

In contrast to the common-law rule, the statute does not require the predicate of hostility or surprise. *See People v. Smith*, 182 Colo. 228, 512 P.2d 269 (1973). In this case all other statutory criteria were met. Berg was given an opportunity to explain or deny the statement before the inconsistencies were made the subject of further examination. The matter contained in the prior inconsistent statement related to information within Berg's own knowledge, and the statement was otherwise admissible. Once the statutory requirements were met, a proper foundation for the introduction of the prior inconsistent statement was laid, and the use of the statement by the prosecution was proper.

## II.
### Instructions

The defendant claims that the trial court failed to properly instruct the jury on the self-defense issue. The instructions which were given to the jury were taken basically from the Pattern Jury Instructions. *See* COLO. J.I. — CRIM. 7:16 and 7:17. The court made minor modifications in the Pattern Jury Instructions which, in this case, probably should not have been made. However, when the instructions are viewed together and considered as a whole, the law relating to self-defense was properly presented to the jury. *People v. Poole*, 185 Colo. 131, 522 P.2d 102 (1974); *People v. Manier*, 184 Colo. 44, 518 P.2d 811 (1974); *see also Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

Basically, the defendant's contention is that the self-defense statute grants broad latitude of action to a person who is under attack. 1971 Perm. Supp., C.R.S. 1963, 40-1-804(1) provides:

"[A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose."

In short, Hawthorne claims that a person is entitled to use a deadly weapon to ward off an attacker as long as some degree of "unlawful physical force" is threatened. Under Hawthorne's theory, the barest minimum of threatened harm could justify a counterattack with a deadly weapon. No civilized society would endorse such a rule.

In this case, Hawthorne used a deadly weapon not only to bludgeon the victim, but also to shoot him. His right to use this weapon was dependent upon his reasonable belief that he was threatened with imminent great bodily harm or loss of life. The trial court's instruction merely made specific that which the statute expressed in general terms. The instruction was, therefore, proper.

The remaining contentions raised by Hawthorne are without merit, and accordingly, we affirm.

MR. JUSTICE KELLEY does not participate.