## No. 26551

## The People of the State of Colorado v. Juan Bastardo

(554 P.2d 297)

Decided September 13, 1976.

John P. Moore, Attorney General, John E. Bush, Deputy, Patricia W. Robb, Assistant, E. Ronald Beeks, Assistant, David K. Rees, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant Juan Bastardo was convicted of murder in the first degree of Robert A. Rivera and of murder in the second degree of Mike Armijo. We affirm the convictions.

The homicides occurred during the early morning hours of March 23, 1972. The People's evidence revealed that the two victims and a friend named Stanley Renner and defendant were in a bar. At approximately the time the bar closed, Rivera, Armijo, and Renner departed from the bar and got into Rivera's white Cadillac. Armijo, who had been drinking heavily, told Rivera, who was driving, to drive around the block. After circling the block, the car stopped near the bar. Armijo got out and approached defendant as the latter left the bar. Armijo struck at defendant, and several shots were heard. Armijo collapsed. Defendant then walked over to the car and fired into it at point blank range, fatally wounding Rivera. Defendant then ran from the scene. He was not apprehended until a year later, in California. He waived extradition and was returned to Colorado for trial.

Trial commenced initially on October 15, 1973, and on that date a jury was selected and sworn, and the prosecution commenced the presentation of evidence. Among those called was Stanley Renner. After Renner's direct testimony, the defense brought to the court's attention that one of the prosecutors had told Renner that the defense was trying to blame the homicide on him (Renner). A hearing was held in chambers and the defense moved for a mistrial on the basis of Renner's possible prejudice against defendant. The court at first denied the motion, but upon re-urging of the motion declared a mistrial for two reasons: first, because of Renner's testimony; and, second, because one of the seated jurors had not been candid with the court on voir dire.

A new trial was commenced on December 10, 1973. At trial, the most critical evidence linking defendant with the killings was the testimony of Rachel Mahaffey and of Mary Lou Trujillo. Both had witnessed the events surrounding the shootings. Mahaffey testified that she heard a shot and saw Armijo fall, and that she then went into shock, becoming oblivious to all that happened. She stated that she saw no weapons, and she denied having seen defendant fire the shots. She also denied seeing defendant approach the Cadillac after the initial shots were fired. The district attorney, however, was permitted to interrogate her about prior inconsistent statements made to police. These statements were to the effect that after Armijo hit him defendant pulled out a gun and shot Armijo.

Trujillo testified that she did not see Armijo shot but heard the shots. She then observed defendant walk to Rivera's car and place "his hand on the car and put his arm in * * *." She was then examined about her prior statement in which she had said that defendant had a gun and had shot Rivera.

## I.

Defendant's first allegation of error relates to the trial court's rulings whereby the prosecution was permitted to impeach the testimony of its own witnesses Mahaffey and Trujillo by the use of their prior inconsistent statements. It is conceded that the prosecution was not surprised by the changes in their testimony and that the witnesses did not unexpectedly become hostile, *cf. Ware v. People*, 76 Colo. 38, 230 P. 123.

■ Colo. Sess. Laws 1972, ch. 44, 39-10-201 at 238,[1] which was applicable in this case, clearly authorized the use of prior inconsistent statements where a proper foundation was laid. Defendant, however, argues that the better practice would be to make the introduction of such inconsistent statements contingent on the trial court's holding of an *in camera* hearing at which the prosecution would be required to lay a foundation. Specifically, suggests defendant, the court should make findings that the proffered statements are in fact inconsistent, that they are based on the direct observations of the witness, and that they are not the result of police coercion or threats of prosecution. The statute did not so require. Its mandate was adequately fulfilled if from all the circumstances it appeared that the prior statement was inconsistent and the statutory conditions were adequately established. As was stated in *People v. Hawthorne*, 190 Colo. 437, 548 P.2d 124, where we were concerned with a predecessor statute (1971 Perm. Supp., C.R.S. 1963, 39-6-12):

"* * * Once [these] statutory requirements were met, a proper foundation for the introduction of the prior inconsistent statement was laid, and the use of the statement by the prosecution was proper."

*See also People v. Smith*, 182 Colo. 228, 512 P.2d 269.

■ The record establishes that the court required the proper foundation for the use of the prior inconsistent statements and we find no error in the admission thereof.

## II.

■ Defendant next contends that the application of section 39-10-201 violates certain of his constitutional rights, including the right to confront his accusers, to the assistance of counsel, to appear when depositions against him were taken, and to due process of law. *U. S. Const.* amend. VI; *Colo. Const.* Art. II, Secs. 16, 17 and 25. We do not agree.

■ The essence of the right to confront one's accusers is to meet adverse witnesses face-to-face, *Colo. Const.* Art. II, Sec. 16, and to have opportunity to cross-examine them. *Simms v. People*, 174 Colo. 85, 482 P.2d 974. The purpose of the rule of confrontation and cross-examination is to prevent conviction by *ex parte* affidavits, to sift the conscience of the witness, and to test his recollection to see if his story is worthy of belief,

---

[1]Now section 16-10-201, C.R.S. 1973.

*People v. Scheidt*, 182 Colo. 374, 513 P.2d 446. In view of the ample pretrial discovery available to defendant and of the actual presence of Mahaffey and Trujillo at trial, defendant had full opportunity to inquire as to their recollection of the events surrounding the homicides and the reasons for changes in their testimony. We do not perceive of any constitutional deprivation under these circumstances. *Gaitan·v. People*, 167 Colo. 395, 447 P.2d 1001.

### III.

As heretofore noted, defendant's first trial·resulted in a mistrial. On retrial, the witness Stanley Renner was permitted to testify. The defense again objected, again urging that the witness had been unfairly prejudiced by the prosecution. The court allowed the testimony, holding that the matter of the witness' prejudice went to his credibility.

■ We hold that the court did not abuse its discretion in this matter. The court properly concluded that Renner's possible prejudice was not in itself sufficient to require the exclusion of his testimony, and that whatever prejudice the latter might harbor against defendant could adequately be explored and brought out on cross-examination. Moreover, Renner testified that he could not identify the killer, and when asked if defendant was the assailant he replied, "I couldn't say if [he] is or isn't. I don't think [he] is." Any error with respect to the admission of this testimony was at most harmless. Crim. P. 52(a).

■ In an argument closely related to.the previous one, defendant invoked the double jeopardy portion of *Colo. Const.* Art. II, Sec. 18. He contends that if the trial court did not err in permitting Renner's testimony during the retrial, as we have held, then the declaration of a mistrial during the first trial was erroneous. Where a court wrongfully declares a mistrial, a retrial of the accused is barred. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543.

■ It is apparent that defendant's argument overlooks the additional reason given by the court for declaring the mistrial — the lack of candor on the part of one of the jurors during voir dire. We find no abuse of discretion under these circumstances in declaring a mistrial, especially where defense counsel repeatedly requested that a mistrial be granted. It is fundamental·that a mistrial granted at the instance of a defendant operates as a waiver of the claim of double jeopardy. *Robertson v. Baldwin*, 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715; *Cardenas v. Superior Court*, 56 Cal.2d 273, 363 P.2d 889, 14 Cal. Rptr. 657, 100 A.L.R.2d 371; *cf. Maes v. Dist. Ct.*, 180 Colo. 169, 503 P.2d 621; *Barriner v. Dist. Ct.*, 174 Colo. 447, 484 P.2d 774. Defendant's double jeopardy argument fails in the circumstances of this case.

### IV.

Defendant contends that the verdict as to the first-degree murder of Rivera should be vacated on the ground that the court improperly failed to

instruct the jury on voluntary manslaughter as to that killing. Defendant argues that there was some evidence that Rivera provoked defendant: *e.g.*, Rivera and Armijo were close friends, and Rivera waited in the car while Armijo assaulted defendant.

Manslaughter, as defined by C.R.S. 1963, 40-2-4 (in effect at the time of this homicide) is the voluntary killing of another human being "upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible * * *." Voluntary manslaughter, section 40-2-5, is the infliction by the victim of a "serious and highly provoking injury * * * upon the person killing, sufficient to excite an irresistible passion in a reasonable person * * *."

In the instant case, there was simply no evidence that the victim Rivera had done anything at all to cause defendant to become suddenly and passionately enraged. The only evidence was that Rivera remained in the vehicle with another person while Armijo struck defendant, and that Rivera was thereafter shot in the face by defendant. This evidence does not justify the giving of an instruction on voluntary manslaughter, and the trial court did not err in refusing such a tendered instruction.

## V.

Defendant argues further that the trial court erred by admitting into evidence samples of ammunition and the results of tests conducted by an officer who fired .38-caliber shots into a wooden board. Cross-examination effectively cast some doubt on the reliability of the tests, but the court concluded that this doubt affected the weight of the exhibits rather than their admissibility. The admission of such experiments is generally within the discretion of the court, and where admitted may be tested by cross-examination. *Hamby v. People*, 109 Colo. 572, 128 P.2d 993. The trial judge did not here abuse his discretion, and even if he did it would be hard to perceive that error as other than harmless under the circumstances.

## VI.

Defendant raises other grounds for reversal which were not designated in his motion for a new trial. We have examined these alleged errors, which relate to the giving of an instruction on flight, the sustaining of a prosecutor's objection to an improperly framed question by defense counsel, and a charge that the trial judge improperly assumed the role of prosecutor. These challenges to the regularity of the trial proceedings are totally without merit and do not warrant further discussion.

Our review of the record indicates that defendant received a fair trial, substantially free of error, and that the evidence, when viewed most favorably to the People, amply supports the verdicts rendered.

The judgment is affirmed.